[No. 5300.]
[No. 2937 C. A.]

CENTRAL SAVINGS BANK v. SMITH ET AL.

1. **Corporations—Stock—Transfer—Failure to Record—Effect.**

     Under the express terms of § 508, Mills' Ann. Stats., a transfer of corporate stock not recorded on the corporate books is a nullity.—P. 93.

2. **Same—Corporation's Failure to Keep Proper Books—Effect.**

     The fact that a corporation fails to keep a proper book in which to record stock transfers does not excuse a transferee from making a bona fide effort to have the stock transferred, under Mills' Ann. Stats., § 508, making transfers invalid where not so recorded.—P. 94.

3. **Corporations—Capital Stock—Assignment—Consideration.**

     An extension of time for the payment of a debt is a sufficient consideration for assignment of corporate stock as security for the debt.—P. 95.

4. **Corporations — Transfer of Stock — Futile Attempt to Have Recorded—Effect.**

     A transferee of corporate stock having done everything in its power to have the transfer recorded in the books of the company immediately upon assignment, the transfer is valid, although not recorded because of the corporation's failure to keep a book for that purpose in accordance with § 508, Mills' Ann. Stats., requiring corporations to keep such books, and making transfers not recorded invalid.—P. 95.

5. **Corporations—Capital Stock—Right to Sell.**

     Until the dissolution of a corporation, the shares of stock have the same characteristics as any other property, and the

right of sale is an incident to its ownership, since a stock cer-
tificate is a continuing affirmation by the corporation of the own-
ership of the stockholder and his power over the stock, until it
is withdrawn in some manner recognized by law.—P. 96.

**6.   Same—Stockholder's Indebtedness to Corporation—Effect.**

The fact that a stockholder is indebted to a corporation,
does not prohibit the sale of the stock, because the corporation
has no lien upon its shares which it can assert against its stock-
holders to restrain a free alienation thereof.—P. 96.

**7.   Same—Right of Transferee.**

The fact that the transferee of corporate stock knew that
suit was pending for the appointment of a receiver and dissolu-
tion of the corporation, and to require the transferer to account
for property alleged to have been wrongfully appropriated, does
not prevent it from purchasing the stock free from all equities
existing between the transferer and another stockholder or the
corporation.—Pp. 99, 102.

*Appeal from the District Court of the City and
County of Denver.*
*Hon. F. T. Johnson, Judge.*

Action by Arthur K. Smith and Alice M. Smith
against J. R. Ward, Hattie N. Ward and The J. R.
Ward Auction Company, a corporation, in which
the Central Savings Bank intervened.   From a judg-
ment for plaintiffs, intervenor appeals.

*Reversed and remanded.*

Mr. A. J. RISING and Mr. S. E. MARSHALL, for
appellant.

Mr. RICHARD MCKNIGHT and Messrs. ELLIOTT &
BARDWELL, for appellees.

Mr. JUSTICE BAILEY delivered the opinion of the
court:

The J. R. Ward Auction Company was a cor-
poration, the capital stock of which was ten thousand
dollars, divided into ten thousand shares.   Of these
shares J. R. Ward owned 4,999, Arthur K. Smith
owned 4,999 and Alice M. Smith and Hattie M. Ward

one share each. These four stockholders constituted the board of directors. Appellees instituted an action in the district court of Arapahoe county against the two Wards and the corporation for the appointment of a receiver, the winding up of the affairs of the company, to require the defendants to account for moneys and goods alleged to have been wrongfully appropriated by them, and for the dissolution of the corporation and the distribution of the proceeds between the parties. In this action a receiver was appointed on the 24th day of November, 1902. On February 20th, 1903, judgment was rendered dissolving the corporation and it was found that J. R. Ward was indebted to the corporation in the sum of $833.02, which he was ordered to pay to the receiver. It was also adjudged that in the event of his failing or refusing to pay such sum to the receiver, the receiver should pay to the plaintiff, Arthur K. Smith, out of any sums remaining in his hands for final distribution, the sum of $833.02, and make equal distribution of the balance between Smith and Ward.

On the third of March, 1903, the appellant, by leave of court, filed a petition of intervention in which it was contended that on the 8th day of December, 1902, J. R. Ward assigned all of his stock to the intervenor as collateral security to secure the payment of $1,554.00 which Ward owed the intervenor, and that the intervenor, being the owner of the stock, was entitled to the amount to which Ward would be entitled upon the final distribution, without any deduction from such sum on account of Ward's indebtedness to the corporation.

Arthur K. Smith answered this petition, denying that the assignment was made upon the 8th of December, and averring that it was made upon the 3rd day of July, 1902, that the assignment was void,

for the reason that the stock had not been transferred upon the books of the company, and alleging that upon the 8th day of December, 1902, the intervenor had knowledge of the action which was then pending for the appointment of a receiver and the dissolution of the corporation, and that intervenor was not entitled to any of the funds of the corporation until the indebtedness of Ward to the company had been paid. To this a replication was filed, and upon the trial it was shown that on the 5th day of July two thousand shares of the Ward stock were indorsed and transferred to the intervenor; that no effort was made at that time by the intervenor to have the stock transferred upon the books of the company, and on December 8th, of the same year, certificates amounting to 2,999 shares were assigned to the intervenor. At that time the intervenor sent a letter to the corporation requesting that all certificates which had theretofore been assigned to the intervenor be transferred upon the books of the company. The corporation acknowledged the receipt of this letter. It is also shown that the corporation failed to keep a stock register such as is required by statute, and that the intervenor had notice of the appointment of the receiver previous to the 8th day of December, and had full knowledge of the proceedings wherein such receiver was appointed. At the trial, upon the plea of intervention, the court rendered judgment in favor of the plaintiffs and against the intervenor, from which judgment the intervenor appeals.

The appellees contend that the judgment of the district court was correct for the reason that the assignment of the stock made in July was a nullity because of the failure to have the transfer made upon the books of the company, as required by statute (section 508 Mills' Ann. Stats.). This is true as

to the assignment of the first two thousand shares. In answer to this the intervenor contends that it was excused from having the transfer made upon the books of the company for the reason that any effort upon its part to have the stock transferred would have been idle, because the corporation had neglected to keep a book, such as is required by the statute, wherein such transfer could be noted.

*Weber v. Bullock,* 19 Colo. 214, is cited as an authority for the proposition that a compliance with the requirements of the statute essential to the transfer of the legal title of the stock is not necessary when it appears that the assignment was made in good faith on valuable consideration, and where the assignee has done all in his power to comply with the requirements of the statute, and is prevented from obtaining such transfer as the law requires by the fault of others. But this is not in point in this case so far as the assignment of the stock made in July is concerned, for the reason that the assignee made no effort to have it transferred upon the books of the company. The assertion is made that because it appears that the corporation failed to keep a proper book in which to record the transfers of stock, any effort made on behalf of the assignee would have been useless. This would not excuse the intervenor from making a *bona fide* effort to have the stock transferred.

At the time of the assignment of the 2,999 shares in December, the intervenor did everything in its power to have the stock transferred upon the books of the company, and proper transfer was not made because of the failure of the corporation to keep such books, and through no fault of the assignee. The plaintiffs contend that this second assignment was not made in good faith, but was brought about solely because of the failure of the

bank to have the assignment made in July noted upon the books of the company, and that the assignee, having failed to have the stock transferred in compliance with the statute, could not by making a retransfer in December, revive the assignment made in July so that it might be effective. This may be true, but it only refers to the two thousand shares which were assigned in July. The 2,999 shares which were assigned for the first time in December rest upon entirely different conditions. The defendant, Ward, was indebted to the intervenor in the sum of something more than $1,500.00, which, upon the 8th day of December, was past due and which at his request the intervenor allowed to be extended "until the receiver matter should be straightened out." The extension of the time of the payment of the indebtedness was a sufficient consideration for the assignment of the 2,999 shares of stock. The assignee having immediately done everything in its power to have the transfer made upon the books of the company, the transfer was valid unless it was affected by the action then pending, of which the assignee had notice, for the dissolution of the corporation.

Plaintiffs contend that upon the dissolution of the corporation the assets belonged to the stockholders, subject to the payment of the corporate debts, and the interest of each stockholder was a mere chose in action, and any transfer of that interest, whether by a transfer of the certificates of stock or otherwise, vested in the transferee only such rights as the stockholder had, and the transferee took subject to all equities between the stockholder and the corporation; citing 2d Thompson on Corporations, §§ 2308 and 2318.—*James v. Woodruff*, 10 Paige 541; *Nathan v. Whitlock*, 9 Paige 152; 2 Waterman on Corporations, 184; 1st Morowitz on

Corporations, § 168; 1st Thompson on Corporations, § 1074.

And also that one who acquires an interest in personal property during the pendency of a suit concerning the same, with actual or constructive notice of the pendency of such suit, takes such interest subject to whatever judgment may be finally entered and acquires no better title than his assignor had, citing 21 Am. & Eng. Enc. Law (2d ed.), 595; *Mechanics' Bank of Alexandria v. Seton,* 1 Peters 299, and other cases, some of which will be hereafter noticed. The answer to the first proposition seems to be that at the time of the assignment of the stock the corporation was not dissolved. Until the dissolution of the corporation the shares have the same characteristics as any other property, and the right of sale is an incident to its ownership. The general rule is that "every owner of corporate shares has the same uncontrollable right to alien them which attaches to the ownership of any other species of property."—10 Cyc. 577.

The mere fact that the owner of the stock is indebted to the corporation does not prohibit the sale of the stock, because the corporation has no lien upon its shares which it can assert against its stockholder, restraining a free alienation of them.—2 Cook on Corporations (4th ed.) 520; 10 Cyc. 580; Boone on Corporations 124.

The corporation having issued the stock certificates, affirms and advertises to the world that the person to whom they are issued is entitled to the stock. It holds out to any one who may deal in good faith with the person named in the certificate that he is an owner and has capacity to transfer the shares, and this certificate is a continuing affirmation of the ownership of the stockholder and his power over the stock, until it is withdrawn in some manner

recognized by law.—*Holbrook v. N. J. Zinc Co.*, 57 N. Y. 616.

If the corporation had desired to prevent the alienation of its stock, and defendant desired to have the stock holden to secure the indebtedness of Ward to the corporation, it should, by some means known to the law, have restrained or prohibited its transfer, or should have caused the stock to be surrendered to the receiver or placed in the custody of the court, so that it might not be transferred, and the rights of third parties become involved; but, it is said, the intervenor having had notice of the pendency of the suit wherein a dissolution of the corporation and the division of the assets was sought, took the stock subject to all of the equities existing between the stockholder and the corporation. A number of authorities were cited in support of this proposition, but, as we view it, none of them are in point.

*Mechanics' Bank of Alexandria v. Seton*, 1 Peters 299, is cited as an authority for the doctrine that the court is not bound to take notice of any interest acquired in the subject-matter of the suit, pending the dispute. The case is not in point. There one Lynn was the holder of certain stock in the bank. He held it as trustee. The bank knew of this fact, yet attempted to hold the stock as security for an indebtedness due from him to the bank. The court held that the bank had actual notice that the stock was held in trust; that it was not the personal property of the stockholder, and that this could not be done. *Phelps v. Elliott*, 85 Fed. 455; *Hockley's Executors v. Swigert*, 5 B. Munroe 586; *Cromwell v. Clay*, 1 Dana 578; and *Meux v. Anthony*, 11 Ark. 441, are cited as authority for the contention of appellees, but in those cases the property was in the actual custody of the court at the time of the purchase. It had been taken from the possession of

the debtor and sequestered for the purpose of paying his debts. The court held that under such circumstances the purchaser takes nothing by his contract, not even in a case where he pays full value and has no actual notice of the pendency of the suit. Cases of this character cannot have any bearing upon the principle here involved, because there the court had done everything within its power to prevent the sale of the property by the debtor. Here the court had done nothing, and the creditors had endeavored to have nothing done, but the stock was left in the hands of the debtor with full right, so far as the inspection of the certificates would show, to sell and barter the same as though no suit had been pending. If the intervenor had inspected the complaint filed by plaintiffs in the suit for the dissolution of the corporation, it would have found nothing there asserting that plaintiffs were endeavoring to secure the stock owned by Ward; neither would it have found anything expressing a desire upon the part of the plaintiffs to interfere with the alienation of that stock by Ward, nor that plaintiffs or the corporation desired to have that stock held for the payment of any indebtedness which Ward might owe the corporation.

On the other hand: "It may be stated generally that in order that what we term the *res litigiosa* may exist, three things must concur: first, the property must be of a character to be subject to the rule *lis pendens;* second, the court must acquire jurisdiction both of the person and the *res;* and third, the *res* must be sufficiently described in the pleadings. If these three things do not occur, there is no *res litigiosa.*"

"As a general rule *lis pendens* is, in law, notice of any fact averred in the pleadings, pertinent to the matter in issue or the relief sought, and of the con-

tents of exhibits filed and made a part of the pleadings, or proved. But in order that the notice may attach, the property involved must be so pointed out in the proceedings, as we have before seen, as to warn the public that they intermeddle at their peril."—Bennett on *Lis Pendens,* §§ 91 and 92.

In relation to this matter of notice of pending actions, Pomeroy, in his work upon Equity Jurisprudence, after defining the different kinds of notice, says that "the legal effect of actual or constructive notice, when established, is exactly the same."—Pomeroy's Equity Jurisprudence, § 594.

And again it is said by the same author:

"Proper and specific allegations are a necessary requisite. *Lis pendens* is notice of everything averred in the pleadings pertinent to the issue or to the relief sought, and of the contents of exhibits filed and proved. In order that the notice may thus operate, the specific property to which the suit relates must be pointed out in the pleadings in such a manner as to call the attention of all persons to the very thing and warn them not to intermeddle. * * *

"The notice arising from a pending suit does not affect property not embraced within the descriptions of the pleadings; nor does its operation extend beyond the prayer for relief."—*Ibid.,* § 634.

Judged by this rule, there was nothing in the case for the appointment of a receiver which would prevent the intervenor from purchasing the stock and taking it free from all equities existing between defendant Ward and the plaintiff or the corporation. Upon this subject it is said by the chancellor in *Green v. Slayter,* 4 Johnson's Chancery Rep. 30:

"I am not for carrying the doctrine of *lis pendens* to the length of not only raising a notice by construction sufficient to charge a party, but of also

extending the objects of the bill by construction, in order to support the notice."

Even though the action had been brought for the purpose of obtaining title and possession of this stock, or of having a lien declared against it, it is doubtful whether the stock could be holden by the plaintiffs or the corporation as against the assignee.

"It has been said that a purchaser of certificates of stock is not chargeable with constructive notice that a suit is pending in which his vendor is defendant and the plaintiff is endeavoring to obtain possession and title to the stock which the purchaser is buying."—Cook on Law of Stock and Stockholders 362.

In suits affecting the title to shares of stock, "after judgment has been obtained and the decree of the court executed, any subsequent transfer of the certificates by the defendant is null and may be disregarded by the plaintiff and by the corporation. But while the suit is pending, the defendant may transfer the certificates and the *bona fide* transferee takes good title to the stock. The latter is not affected or bound to take notice of a *lis pendens* in that suit."—Cook on the Law of Stock and Stockholders, § 361.

"A purchaser of certificates of stock is not chargeable with constructive notice that a suit is pending, in which his vendor is defendant and the plaintiff is endeavoring to obtain possession and title to the stock which the purchaser is buying. The doctrine of *lis pendens* has no application to sales of shares of stock. The purchaser is bound to know that a judgment or decree has been rendered and executed, affecting the certificates he is buying, if such a judgment or decree exists, but he is not bound to know that a suit is pending, in which judgment has not yet been rendered."—*Ibid.*, § 362.

Along the same line it is said:

"Since the decision of the case of *McNeil v. Tenth Nat'l Bank,* above cited (46 N. Y. 325), certificates of stock with blank assignments and powers of attorney attached must be nearly as negotiable as commercial paper. The doctrine of constructive notice by *lis pendens* has never yet been applied to such property. This doctrine must have its limitations. It could not be applied to ordinary commercial paper, nor to bills of lading, nor to government or corporate bonds payable to bearer. Indeed, I do not find that it has ever been applied, and I do not think it ought to be applied to any of the articles of ordinary commerce. Public policy does not require that it should be thus applied. On the contrary, its application to such property would work great mischief and lead to great embarrassment."—*Leitch et al. v. Wells,* 48 N. Y. 613.

"One of the leading principles upon which the doctrine of *lis pendens* is founded is that the specific property must be so pointed out by the proceedings as to warn the whole world that they intermeddle with it at their peril. There must, therefore, be something in the pleadings, * * * at the date of the purchase, to direct the purchaser's attention to the property as the identical thing which is the subject of the litigation."—Wade on Law of Notice, § 351.

In order to make the doctrine of *lis pendens* applicable, "the property upon which the *lis pendens* is to operate must be so identified in the action as to notify all who may subsequently become interested in the estate that there is an action pending which may or will affect it, and that, if they become interested in it, they do so at their peril—that is, it must be sufficiently certain to give it the means of distinct and intelligible information of the matter

to which it relates."—1st Herman on Estoppel and *Res Adjudicata* 189.

"While the doctrine (of *lis pendens*) in general applies to all equitable suits in which the subject-matter is land, or any estate or interest therein, the proposition is equally true and general that it does not extend to ordinary suits concerning personal property, goods and chattels, security or money."—2d Pomeroy's Equity Jurisprudence, § 636.

"It is well settled that the doctrine of constructive notice from *lis pendens* does not embrace suits concerning negotiable instruments or moneys, so as to affect the title of a transferee for value in good faith during the pendency of the action, even when the transfer was made in direct violation of an injunction, so that the endorser or assignor would be punishable for the contempt."—*Ibid.*

Our attention has been called to no case or authority, and we have not succeeded in finding any, which holds that the assignee of corporate stock to whom the stock was assigned during the pendency of an action to dissolve the corporation, took the stock subject to any indebtedness existing in favor of the corporation and against the original stockholder; while there are many authorities which hold that the stock may not be transferred after dissolution, that any attempted transfer amounts only to an equitable assignment, and is subject to the equities existing between the corporation and the stockholder. It seems to be the established doctrine that:

"A shareholder in a corporation has an interest, in proportion to the amount of his stock, in all the corporate property, and has a right to share in any surplus of profits arising from its use and employment in the business of the company; and this right does not depend upon the time when he became a shareholder, but attaches whenever he acquires the

stock, and entitles him to all subsequent dividends."
—10 Cyc. 557.

And: "Upon the dissolution of a corporation, all its property, both personal and real, is to be used in paying the debts of the corporation, and after the debts are paid, the remainder is to be distributed among the stockholders."—2d Cook on Corporations (4th ed.) 641.

"In this respect, the rights of a pledgee of shares of the capital stock appear to be the same as those of an actual grantee."—10 Cyc. 558.

From the foregoing, we conclude that the intervenor takes nothing by reason of the attempted assignment of two thousand shares upon the 5th of July, for the reason that the same were not transferred upon the books of the company, pursuant to the statute. As to the 2,999 shares assigned to it in December, and of which assignment the corporation had due and timely notice, and the intervenor did everything within its power to have the same transferred upon the books of the company, we determine that the intervenor takes such stock free from any indebtedness existing in favor of the corporation and against Ward, and that it is entitled to a *pro rata* share of the assets of the corporation after the payment of the company's debts and the expense incurred in the matter of the receivership and dissolution of the corporation.

The judgment of the district court will therefore be reversed, and the cause remanded with instructions that, if any further proceedings are had in this matter, they shall be in harmony with the views herein expressed.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.