### DAMRON *v.* DENNY *et al.,* receivers.

1. Where none is provided by statute or charter or by-laws, a corporation has no lien on its shares as against the holders thereof. *Buena Vista Bank* v. *Grier*, 114 *Ga.* 398 (40 S. E. 284); *Bank of Culloden* v. *Bank of Forsyth*, 120 *Ga.* 575 (48 S. E. 226, 102 Am. St. R. 115); Fletcher's Cyclopedia of Corporations, § 3599; Cook on Corporations, §§ 520, 521.

2. Where a person purchases bona fide and for value and has transferred to him certificates of stock, he is protected as such innocent holder in a suit against him by the corporation seeking to cancel said shares on account of indebtedness for unpaid subscriptions due the corporation by his transferors. Accordingly, the judgment of the court canceling the shares of stock was erroneous.

No. 1210. JULY 19, 1919.

Equitable petition. Before Judge Wright. Floyd superior court. October 23, 1918.

From the record in this case it appears that Rome Industrial Insurance Company was capitalized at $100,000. J. C. Porter, C. R. Porter, J. L. Bass, and E. A. Heard each held certain certificates representing a number of shares of this original issue of stock, which were fully paid for by them. By charter amendment the name of company was changed to Rome Insurance Com-

pany, and its capital stock increased to $1,000,000. Upon a stockholder's petition, charging that the company was being mismanaged and abused by its officers for their own private ends, receivers were appointed. In the proceeding under which they were appointed the receivers filed an intervention alleging, that practically all of the increased issue of stock was subscribed for by seven persons, including the four above mentioned, but had not been fully paid for; that all of the subscribers were directors, and that some were officers of the insurance company; that under an agreement all of the proposed new issue of stock so subscribed for by them was pooled and a trustee named to sell the same; that a large amount of the stock was sold, most of it on a basis of three dollars for each dollar of par value, but that only the par value of ten dollars per share was paid to the insurance company, and that as sold the officers and directors of the insurance company, taking advantage of their position and power as such, would illegally cause to be issued to the purchasers, out of their subscriptions to the increase in stock, certificates representing the particular number of shares paid for by the purchasers, instead of crediting the amount so paid pro rata upon the total amount of their unpaid subscriptions; and that there are due by each of the four persons above named large amounts on account of their unpaid subscriptions to the increased issue of stock, which they fail and refuse to pay. It is alleged, that at the time of appointment of receivers C. R. Porter, J. C. Porter, J. L. Bass, and E. A. Heard, respectively, held certificates representing 1562, 1547, 905, and 100 shares of the original issue of $100,000 of stock, and that in addition Bass held 800 shares of the increased issue; all of which (except 669 of the shares held by J. C. Porter) Lloyd Damron is claiming have been transferred and belong to him; that Damron is not an innocent purchaser for value; that at the time of assignment of the stock to him he knew each of the parties named had been guilty of the misconduct charged, knew that all of them were largely indebted to the insurance company on account of their subscriptions to the increased stock, and that it was the purpose of the receivers to resist any and all claims of said parties on account of said certificates of stock to participate in the distribution of assets among the bona fide stockholders, and that he allowed the same to be transferred to him in pursuance of a

scheme for the purpose of defrauding the bona fide stockholders of the company; and that all of the stock held by Damron except fifty shares has been deposited, under an order of court, with the receivers. The prayers are that the certificates of stock held by Damron be canceled and ordered surrendered to the receivers; that Damron be not allowed to participate in any distribution of the assets of the company, unless the balances due on the stock subscriptions above mentioned are first paid; that the court protect the bona fide stockholders by proper decree in the premises; and for general relief.

By his answer the respondent denies the allegations that the stock was transferred to him in pursuance of a scheme to defraud other stockholders, and "shows that he is a bona fide holder of said stock for value, and that the parties from whom he purchased same, and the parties mentioned in the intervention, have no claim or equity whatever against such stock, but that he has paid for the stock he holds and is the bona fide owner and holder thereof; . . that the parties to whom such stock was issued have no interest whatever in said stock or in the proceeds thereof; . . that he is informed that suits for large amounts were filed against some of the parties from whom he purchased stock, to wit, C. R. Porter and J. C. Porter, said suits having been based upon subscription contracts . . ; that such suits are still pending; . . that a claim was filed in the district court of the United States against the estate of said J. L. Bass, who had been adjudicated a bankrupt, and said claims had been disallowed by the referee, and the referee's decision had been approved by the district judge, and no appeal had been taken therefrom," and that he is informed that "no suits or claims were ever filed against E. A. Heard;" that he is further informed that "other suits for large amounts were filed against C. R. Porter and J. C. Porter, which have been settled, said suits involving the alleged illegal pooling and sale of the stock, . . and that no suits were filed against J. L. Bass or E. A. Heard; . . that the stock-subscription suits above referred to have been pending for about two years; that the receivers have been in charge for more than a year; that the other suits referred to have been pending for more than a year; and yet . . the receivers made no effort to hinder or prevent the said owners and subscribers of stock, C. R.

Porter, J. C. Porter, J. L. Bass, and E. A. Heard, or their trustees in bankruptcy, from selling said stock," and that "part of the stock issued to C. R. Porter and J. C. Porter which has been purchased by this respondent was purchased by him from persons who held same as collateral security for debts prior to any claim of the receivers against this stock or any notice or threat of contest," and that "the stock of J. L. Bass and E. A. Heard was purchased from the trustee in bankruptcy under order of the bankruptcy court." The respondent also sets up that he can neither admit nor deny the allegations of the intervention as to the failure of the four persons above named to pay the amounts alleged to be due on their subscriptions for said capital stock; but that while it may be true they had not paid for the amounts of the increased issue of stock subscribed for by them, as set forth in the intervention, "yet he is informed and believes, and so charges, that they had fully paid for the stock standing in their names recited in the fifth paragraph of the petition," being the certificates of stock which the receivers sought to have canceled. He prays that he be allowed to share pro rata in the distribution of the assets.

Upon the hearing the plaintiffs introduced, among other documentary evidence, a suit brought by the receivers against C. R. Porter, on account of a certain subscription to the capital stock of Rome Insurance Company, with judgment dated March 3, 1915, aggregating $195,314.00, and execution issued thereon; two similar suits against J. C. Porter, with judgments dated March 3, 1915, aggregating $162,925.50; also certificates of stock representing 1562 shares transferred by C. R. Porter to Damron, and certificates of stock representing 888 shares transferred by J. C. Porter to Damron, together with said transfers, made prior to March 3, 1915, the date of the judgments in the above-mentioned stock subscription suits, but subsequent to the appointment of receivers for the insurance company; also certificates representing 1705 shares with transfer dated October 20, 1914, of the trustee in bankruptcy of J. L. Bass to Damron; also certificates representing 100 shares with the transfer dated October 30, 1914, of the trustee in bankruptcy of E. A. Heard; also an agreed statement of facts containing the following language: "The answer of said intervention thereto, hereby agreed to be true and correct, and it is agreed that the court may consider and pass upon said agreed statement of facts.

. . It is admitted by all parties that C. R. Porter and J. C. Porter are both in bankruptcy, and that the claims of the receivers of the Rome Insurance Company were filed in the bankruptcy proceedings, and that C. R. Porter and J. C. Porter have now been discharged in bankruptcy, but that no payment was made on the judgments in these cases. It is further agreed by all parties that all of the certificates of stock referred to and described in the fifth paragraph of the petition was original stock of the one hundred thousand dollars capital and were fully paid for, except certificates Nos. 1539, 1540, 1541, 1542, and 1543, as transferred by T. W. Lipscomb, trustee in bankruptcy for J. L. Bass, to Lloyd Damron, said certificates aggregating 800 shares, which were a part of the increased capitalization of the company. . . It is further agreed that there was no charter provision nor by-law of the Rome Insurance Company creating a lien upon this stock. . . It is further agreed that all of said stock was purchased by Lloyd Damron for a valuable consideration." The court made the following judgment: " Lloyd Damron, the defendant, received the stock sold to him subject to the right of set-off by the receivers of any judgment in favor of them for unpaid subscription to stock by the parties from whom defendant Damron purchased his shares of stock, and these shares of stock are therefore adjudged satisfied and paid, and ordered canceled." Error is assigned upon the overruling of the motion for a new trial, the principal grounds being: (*a*) That there was no evidence showing that the defendant, Damron, knew of the existence of such indebtedness and no evidence showing that there was any collusion between Damron and his vendors, as alleged in the petition; and therefore the judgment of the court was without evidence to support it, and was directly contrary to law and the principles of equity. (*b*) That the evidence and agreed statement of facts showed that there was no lien upon this stock, by reason of such indebtedness, either by charter or by-law, and the judgment of the court canceling said stock was therefore contrary to law and evidence. (*c*) That as to a part of such stock purchased by Damron from the trustees in bankruptcy of E. A. Heard and J. L. Bass, the evidence shows that such sale was made by order of the bankrupt court, and that plaintiffs sought to intervene therein and made no effort to prevent the sale of said stock in any way. (*d*) That the evidence

shows that the plaintiffs stood by and allowed a sale of said stock without objection or proceedings of any kind, and therefore they are now estopped to attack the validity of such stock.

*Graham Wright, W. T. Murphee,* and *Robert C. & Philip H. Alston,* for plaintiff in error.  *Maddox & Doyal,* contra.

GILBERT, J.  1.  The first headnote need not be elaborated.

2.  Damron, in his answer, denies all allegations of bad faith, and avers that he holds bona fide and for value and that his transferors have no interest in the stock or the proceeds thereof.  In the agreed statement of facts it is admitted that the answer of Damron is true and correct; and also it is specifically admitted that all of said stock was purchased by Damron for a valuable consideration and that all of it was of the original issue and fully paid for, except certain designated certificates representing 800 shares which were a part of the increased capitalization of the company.  These agreements as to the bona fides of Damron negative the allegations in the petition of intervenors as to his notice and bad faith.  It must have been the intention of the parties to agree that Damron purchased the stock in good faith for a valuable consideration, without actual knowledge of any claims by the corporation against Porter et al., on their unpaid subscription contracts.  It is also a necessary conclusion that the certificates of stock transferred to Damron and which he now holds contained nothing in themselves to put him on notice of said debts, nor anything requiring him to make inquiry concerning it.  It is argued by defendants in error that shares of stock in a corporation constitute a trust fund for the payment of debts.  No principle is better established by the adjudications of this court than that unpaid stock subscriptions constitute such a trust fund.  This suit does not purport to proceed in the interest of creditors, nor is it sought to obtain a money judgment at all.  Its sole purpose is, by cancellation of the stock, or otherwise, to prevent the holder thereof from sharing in the assets of the corporation after the debts have been paid, along with holders of other stock which has been fully paid up.  Whatever may have been the real equities between the corporation, or between holders of stock fully paid for and these subscribers who are alleged to have been guilty of fraudulent conduct, a bona fide holder for value cannot be made to suffer; and the defendant in this case was such a holder by the

admission of all the parties to the suit. *Bank of Culloden* v. *Bank of Forsyth,* 120 *Ga.* 575 (48 S. E. 226, 102 Am. St. R. 115). This case differs from that of *Fouché* v. *Merchants National Bank,* 110 *Ga.* 827 (36 S. E. 256). It was held there that the court erred in granting a nonsuit, because the evidence was such as to require a submission to the jury of the issue as to good faith and notice. As stated above, these issues are foreclosed in the instant case by the admission of the parties. Compare Holbrook *v.* New Jersey Zinc Co., 57 N. Y. 616; Central Savings Bank *v.* Smith, 43 Colo. 90 (95 Pac. 307). The judgment of the court canceling the stock in question was erroneous.

*Judgment reversed. All the Justices concur.*