## MAY v. CLELAND.

CORPORATIONS—STOCK AND STOCKHOLDERS—UNRECORDED TRANS-
FER—EXECUTION SALE.

A pledge of corporate stock as collateral for a·loan will be up-
held as against one who, with notice of the transfer, pur-
chases the stock at a sale under execution levied upon it as
the property of the pledgor, although the transfer to the
pledgee was never recorded upon the books of the corpora-
tion.

Appeal from Ingham; Person, J. Submitted April 22,
1898. Decided May 17, 1898.

Bill by John A. May, receiver of the Ingham County
Savings Bank, against Rolland J. Cleland, Sidney Edson,
Frederick Thoman, Philip Perkins, and the Michigan
Knitting Company, to foreclose a lien on certain shares of
stock in the defendant corporation. From a decree for
complainant, defendant Thoman appeals. Affirmed.

The facts are undisputed, and are as follows: The com-
plainant, as receiver of the Ingham County Savings Bank,
filed the bill of complaint in this cause to foreclose a lien
on certain shares of the corporate stock of the Michigan
Knitting Company, pledged December 13, 1895, with
said bank, by the defendant Rolland J. Cleland, as col-
lateral security for the payment of a certain loan made
to him, and certain indebtedness owing said bank by one
George M. Dayton. At the time of receiving the stock,
the bank did not notify the Michigan Knitting Company
of its rights therein, nor did it have or seek to have a
transfer of the stock upon the books of the company until
after the levy of the execution hereinafter mentioned. On
the 9th day of July, 1896, a levy was made upon this
stock under a writ of execution issued on a judgment in
the circuit court for Ingham county in favor of one Philip

Perkins and against the defendant Cleland and others. The levy was regularly made, and proper proceedings to a sale thereof followed. On August 13, 1896, said shares of stock were sold by Sidney Edson, deputy sheriff, to the defendant Frederick Thoman, for the sum of $7.50, such sum being the highest bid made therefor. While the sale was in progress, and before Mr. Thoman purchased, the complainant caused public notice of its rights in said stock to be given to all bidders attending the sale; and the defendant Thoman had full notice of complainant's rights and equities in the stock. The case was heard upon pleadings and proofs, and a decree made in favor of the complainant, establishing his prior rights and equities in the stock, and decreeing a sale thereof for the satisfaction of the debts for which it had been pledged. Defendant Thoman alone appeals.

*Charles F. Hammond*, for complainant.

*Stewart & Heck* (*Harris E. Thomas*, of counsel), for appellant.

GRANT, C. J. (*after stating the facts*). The sole question is: Does the transfer of shares in a corporation at an execution sale take precedence of a previous *bona fide* sale and transfer not entered on the books of the corporation? The authorities are in conflict. In 30 Am. Law Rev. 223 *et seq.*, the decisions in the various States are collected. In that article the author argues forcibly for the execution creditor, and reaches the conclusion that the weight of authority supports that theory. He, however, says: "As a theory, this ground is opposed by most of the text-writers, including Cook, Morawetz, Lowell, and Pomeroy." Counsel for the defendant have given us the benefit of an able and exhaustive examination of the decisions in the States where the question has arisen. We deem it unnecessary to discuss or to distinguish them. We think our own court has settled the question. *Mandlebaum* v. *North American Mining Co.*, 4 Mich. 465;

*Newberry* v. *Detroit, etc., Manufacturing Co.*, 17 Mich. 141; *McLean* v. *Charles Wright Medicine Co.*, 96 Mich. 479. In the *Newberry Case* it was held that a transfer of stock, though unrecorded, conveys the interest of the holder, and is valid, except as against persons having equities; and that a judgment creditor buying at an execution sale, with notice of the transfer, can get no better title than his debtor had. One Russell was the owner of the stock, as appeared by the books of the corporation, but had sold and transferred his shares to two other parties before Newberry's levy was made. Chief Justice COOLEY said: "The levy was entirely ineffectual." Justice CAMPBELL said: "No title passed under the execution sale, as Russell's rights had been already divested." In the *Mandlebaum Case* it was held that these certificates of stock are "not commercial paper, in the strict sense of the term, but that the holder is entitled to every right respecting them, as against third parties, which the law confers upon the holder of commercial paper." In the *McLean Case* we cited with approval the *Mandlebaum Case*, and held that the transfer upon the books is not essential to the validity of the purchaser's title. An execution creditor has no prior equities, nor are we able to see that he has any existing equities in consequence of his levy. He has parted with no interest or right, and is in no worse condition by the failure of the levy than he was before. If his debtor has no title, he can acquire none by a levy and sale, any more than he could by a levy and sale of land, the title to which, upon the record, stood in the debtor, but with which he had parted, or by a levy and sale of personal property in his possession, but to which he had no title. Cook, Stock, Stockh. & Corp. Law, §§ 486, 487; 1 Mor. Priv. Corp. §§ 193–195.

The decree is affirmed.

The other Justices concurred.