J. O. FRENCH, Appellee, v. THE NORTHWESTERN LAUNDRY, Appellant.

Contracts:  RESCISSION:  ESTOPPEL.   One who agrees with others
1  to consolidate their several properties at such valuations as not to exhaust the total capitalization of the new concern and to accept stock for his interest therein and who thereafter turns over his property, participates in the organization of the new company and accepts stock in payment for his interest with knowledge of the total issue, cannot predicate an action to rescind the contract and recover his property, or its value, on the representation of other members that the total authorized capital stock would be issued and fully paid, though

in effect a fraudulent inducement to his entering the consolidation, especially in the absence of any showing that he suffered injury thereby. ·

**Parties.** The court will not determine the rights of persons who
2 are not parties to the suit.

**Corporate stock:** CONSIDERATION THEREFOR: INDORSEMENT. Failure
3 to indorse on a certificate of stock the amount and manner of payment therefor as provided by Code, Section 1627, will not render a contract in relation thereto and the stock issued in pursuance thereof void especially where it appears that full value in property was paid for the stock and that such indorsement would not have altered the situation of the parties.

*Appeal from Polk District Court.*— HON HUGH BRENNAN, Judge.

WEDNESDAY, MAY 9, 1906.

REHEARING DENIED, THURSDAY, OCTOBER 25, 1906.

THE opinion states the case. From a decree in favor of plaintiff, the defendant appeals.— *Reversed.*

*Bowen, Brockett & Weldy,* for appellant.

*E. H. McVey* and *J. D. Laws,* for appellee.

BISHOP, J.— The Northwestern Laundry is a corporation engaged in conducting a laundry business in the city of Des Moines. As originally incorporated it was capitalized at $5,000, and on January 1, 1904, the entire stock was in the hands of J. A. McLeod and T. R. Hazard, each owning a moiety thereof. Said persons constituted the board of directors, and the former was president and the latter secretary and treasurer. At a meeting held on the date mentioned, an increase in the capital stock to $50,000 was voted, and it was agreed that of such amount $20,000 should be issued to McLeod and Hazard in lieu of their then present

holdings; said sum of $20,000 being considered as the value of the laundry plant and business. The remainder of the stock was to be disposed of as the interests of the corporation might require. Within a few days an amendment to the articles of incorporation was adopted and properly made of record. At the time in question this plaintiff was engaged in the laundry business in said city under the name of Model Laundry; one Stehm was likewise engaged under the name of City Laundry, and one Cully was likewise engaged under the name of Tilden Laundry. During the month of January negotiations were had resulting in the purchase by the defendant corporation of the plants, business, and good will of said several properties. The value put upon the plant and business of plaintiff was $6,000, and it was agreed that he should take stock in the defendant corporation in the sum of $6,000 in full payment therefor. The value put upon the City Laundry was $5,000, of which $1,500 was to be paid in cash, and $3,500 in stock. The value put upon the Tilden Laundry was $2,700 and was to be paid in cash. About February 1st McLeod, Hazard, Stehm, and plaintiff, met at the office of the defendant corporation, and McLeod and Hazard having surrendered their old stock there was issued to each of them new stock in the sum of $12,100; there was issued to plaintiff stock in the sum of $6,000, and to Stehm in the sum of $3,500. For the stock issued to themselves in excess of $20,000 McLeod and Hazard paid $4,200 in cash, and the money was used to pay Stehm and Cully. No further issues of stock had been made at the time this action was commenced.

Plaintiff's action is in equity and the original petition was filed April 5, 1904. The petition is not well drawn, to say the least, but the gravamen of the complaint seems to be that McLeod and Hazard, officers of and acting for the defendant corporation " for the purpose of defrauding and deceiving this plaintiff, and to induce him to part with his property, falsely and fraudulently represented to him that

the capital stock of said corporation should be increased to $50,000, all of which should be fully paid up before the commencement of business by the new organization, and that they thereby induced him to part with the title to his property." Further, it is alleged that the value of the plant and business of the defendant corporation had been agreed upon as $18,000, and that the issue of stock to McLeod and Hazard in excess of that sum was fraudulent as against him and other stockholders of the corporation. It is also said that " the certificates of stock issued by the said defendant corporation were issued in violation of section 1627 of the Code, in that no indorsement was made on the face thereof of the amount or portion of the par value paid to the corporation therefor, and do not state the amount paid in money and property, as required by law." McLeod and Hazard were made parties defendant, and the prayer of the petition is for a receiver for the property and business of the defendant corporation; for a money judgment as against McLeod and Hazard in the sum of $6,000, and for a sale of the property of the defendant corporation to satisfy such judgment; for a cancellation of $2,000 of the stock of the defendant corporation, and for general equitable relief. McLeod and Hazard appeared in response to notice, and they joined in a motion the grounds of which were that upon the face of the petition there was an improper joinder of causes of action, and that they were improperly joined as defendants with the corporation. A like motion was filed on behalf of the defendant corporation. These motions were sustained, and plaintiff was ordered to separately docket his case against McLeod and Hazard and at law. Thereupon plaintiff filed an amendment to his petition in which he dismissed his cause of action against McLeod and Hazard, without prejudice. In such amendment he further pleaded as against the defendant corporation that he had made tender of a return of his stock, and he therefore prayed " as in his original petition," and that he have a decree for rescission; that he be re-

stored to his original rights by a return of his property, or that in lieu thereof he have judgment against the defendant in the sum of $6,000.

I. Conceding for the purposes of the case that failure to make good a representation that the stock of the defendant corporation should all be issued and fully paid up before commencement of business, would amount to a fraud upon plaintiff such as to entitle him in an action against the corporation alone to rescind, still our reading of the record does not disclose evidence sufficient to support the allegation as made by plaintiff. Whatever representation was made on the subject was by Stehm who was seeking to induce plaintiff to go into the deal. Stehm was authorized by McLeod to negotiate with plaintiff for the purchase of his plant and business to be paid for in stock of the corporation, and it appears that Stehm took an option in writing on the property in his own name. In such writing it was recited that if the option be exercised, payment of $6,000 showed be made in cash " or full paid stock of the par value of $6,000 in a corporation that may be formed with a full paid capital stock of not less than $50,000," etc. Plaintiff says he relied on Stehm and on this contract as it read. Now at the meeting on February 1st such writing was not produced, and, if that be material, neither McLeod or Hazard knew of its existence. At such meeting the relative rights of the parties in interest to stock was discussed, and the stock was then written up and delivered. Plaintiff received his 60 shares, and he knew that no more than 337 shares all told were issued. An election of officers was had, plaintiff and the others voting their respective shares, McLeod being elected president, Hazard manager, and Stehm secretary. Plaintiff, as a witness on the trial, says: " As soon as the officers were elected the new corporation was in force. It was said that they were going on to buy laundries until the full $50,000 was in force." And again: " I understood it was

1. CONTRACTS: rescission: estoppel.

to be $50,000 paid-up capital and that laundries were to be purchased until $50,000 had been used. . . . I supposed that the capital stock was to buy up laundries and my understanding was that the entire new issue of capital stock would be exhausted in the purchase of other laundries."

Moreover, plaintiff knew at all times that the plant of the defendant corporation was in active operation, that it was a going concern, and that it could not be stopped without loss of its business and good will. With this knowledge, and well knowing that 163 shares of the stock authorized remained unissued, he accepted of his stock and delivered over his property to the corporation, and thereafter watched the operation of the plant without protest down to the time of the commencement of this action. From such facts and circumstances we conclude that plaintiff understood, as did the others present, that the shares remaining unissued were to be sold to other parties as occasion presented itself, and that they were to be issued only as sold. In any event he knew that the business of the corporation was to be proceeded with under the amended articles, and without regard to the fact that all the stock had not been issued. If the effect of this was to perpetrate a fraud on him, he should have at once announced his purpose to rescind; he should have refused to turn over his property and take the stock in payment. Not having done so then he cannot be permitted to do so now. In principle this conclusion finds support in the following cases: *Evans v. Montgomery,* 50 Iowa, 325; *Insurance Co. v. Butler,* 83 Iowa, 124; *Blackman v. Wright,* 96 Iowa, 542; *Grymes v. Sanders,* 93 U. S. 55 (23 L. Ed. 798). Counsel for plaintiff do not pretend in argument that the mere failure to effect a sale of the remaining shares of stock could be made the basis of an action to rescind. But aside from that, and in any event, such right could not exist except upon proof of some injury. And there was no attempt at proof thus directed. It is no part of plaintiff's contention that the corporation did not have ample working

capital, and it is not even suggested in the record that the value of plaintiff's stock, or the percentage of his profit, would have been any greater had all the stock provided for been issued.

II. We do not see how consideration can be given to the matter of the issue of stock to McLeod and Hazard in excess of the amount which, as alleged by plaintiff, was agreed upon. As matters stand, McLeod and Hazard are strangers to the action. Conceding the right of plaintiff to sue, the court will not, in the absence of the parties to whom the stock was issued and who presumably are claiming to own the same, undertake to determine any question arising out of such stock issue.

2. PARTIES.

III. As the record stands, the action of the plaintiff is for a rescission. One of the grounds alleged therefor, as we have seen, is that the certificate of stock issued to him was not indorsed as required by the provisions of section 1627 of the Code. It is no part of the contention of plaintiff that, in the absence of such indorsement, the statute must be given effect to render void the contract between the parties and the certificate issued in fulfillment of such contract. The statute does not so provide in terms, and, on the state of the record, we need say no more than that it should not be given such effect. *Pangborn v. Westlake,* 36 Iowa, 546; *Pennypacker v. Insurance Co.,* 80 Iowa, 56. The contention of counsel seems to be that by the failure to indorse, the corporation defendant acting through its officers was aided and assisted in perpetrating the fraud alleged upon plaintiff. This is to attach importance to the subject only as a matter of evidence. But in any event it is to be said that plaintiff gave full value in property for the stock issued to him. The situation of the parties and their knowledge respecting the same would not have been changed by a fraction had the certificate been indorsed according to the truth. He is therefore in no position to complain.

3. CORPORATE STOCKS: consideration therefor: indorsement.

From what has been said, it follows that the decree appealed from should be, and it is, *reversed*.