BANKERS TRUST COMPANY, Appellee, v. W. B. ROOD et al., Appellees; THE MONARCH COMPANY, Appellant.

No. 40294.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

DECEMBER 9, 1930.

*Henry & Henry,* for The Monarch Company, appellant.

*Burnstedt & Hemingway,* for appellant and Therm-A-Jug Company, appellee.

*Howard L. Bump,* for plaintiff, appellee.

*Wilson & Shaw,* for W. B. Rood, Mary F. Rood, L. C. Rood, and Maud Amy Rood, appellees.

KINDIG, J.—The defendant-appellant, The Monarch Company, is an Iowa corporation organized for the purpose of manufacturing equipment to be used in the care of hogs. Such equip-  ment includes "watering and feeding troughs, oilers, houses, and other articles of a similar character." This corporation has been in existence for many years, and, on March 21, 1921, E. S. Johnson was president, while the appellee E. J. Rood filled the position of secretary. On July 1, 1919, appellee W. B. Rood was a stockholder and director of The Monarch Company. Up to that time, the stock issued by the corporation was small, and consequently the government taxes were exceedingly high. In order, therefore, that there might be some reduction of these taxes, it was agreed, July 1, 1919, by those interested in the corporation, that additional stock should be issued. For some of this stock the purchasers thereof paid cash. Others, however, gave their notes. Among those who procured the stock without cash was the appellee W. B. Rood.

His portion of stock thus obtained was 188 shares, represented by Certificate No. 125. The par value of each share was $100.

A dispute arises at this juncture concerning the rights acquired by Rood through this transaction. It is claimed by appellant that the stock certificate was merely signed by the corporation with the proper subject-matter filled in in the blanks, and then retained by that institution, together with Rood's note, to be thus held until the purchase price represented by the note was fully paid. Contrary to that contention, it is said by appellees that the stock was duly issued to appellee W. B. Rood in consideration for his said promissory note of $18,800. That disagreement will receive further attention in another part of this opinion

After the stock manipulation aforesaid, the appellee W. B. Rood, on March 21, 1921, deposited the aforesaid 188 shares of The Monarch Company stock, together with other securities, with the appellee Bankers Trust Company, at Des Moines, for the purpose of securing a loan of $45,000. Following that transaction, payments were made to the Bankers Trust Company by the appellee W. B. Rood on the money thus borrowed, until the indebtedness was reduced from $45,000 to $36,000. So, finally, on October 4, 1923, the appellees W. B. Rood, Mary F. Rood, L. C. Rood, and Maud Amy Rood, as before said, executed the note in suit for $36,000, payable to the Bankers Trust Company, being the balance due that institution, as before explained. Said note was never paid, and the Roods became insolvent. Consequently, the present action was brought by the Bankers Trust Company, to obtain judgment for the amount due on the note and foreclose on the securities above named, including the 188 shares of The Monarch Company's stock belonging to W. B. Rood. Accordingly, judgment and decree was entered by the district court in favor of the Bankers Trust Company. Judgment was duly entered against the Roods, and the collateral security, including said 188 shares of The Monarch Company stock, was ordered sold under foreclosure.

No controversy arises about any part of such judgment and decree except the portion thereof which recognizes the validity of the Bankers Trust Company's lien on the 188 shares of W. B. Rood's stock in The Monarch Company.

Complaint is made by the appellant, The Monarch Com-

pany, because the district court did not hold that W. B. Rood received no interest in and to said stock, and consequently that the appellee Bankers Trust Company obtained nothing through the action of W. B. Rood in attempting to pledge such stock. Briefly, that is the storm center of the present controversy. Each argument advanced by appellant will now be considered.

I. At the outset, it is insisted by appellant that the 188 shares of stock before mentioned were never delivered to W. B. Rood, and therefore could not be used by him for the purposes of collateral security. Possession of the stock was obtained by W. B. Rood, appellant insists, through theft or other misconduct. Appellees, on the other hand, maintain that the stock was in fact delivered by the corporation to W. B. Rood, as purchaser thereof. This dispute involves the facts. Hence, reference to them is now essential.

Appellant's witnesses testified that the stock involved was to be paid for from future dividends contemplated. Those witnesses also declared that there was a resolution of the corporation's board of directors covering the proposition, but that the same was not made of record. Apparently the directors agreed among themselves that title should not pass. J. E. Boeye, Earl Mason, and E. S. Johnson so testified. According to those witnesses, W. B. Rood's stock and the note given therefor were to be deposited in the company's safe and there held until the note was paid, in which event the stock would become the property of Rood. Mingle and Mason, witnesses above named, apparently were not present at said meeting. Also, there is much indefiniteness and uncertainty about the alleged conditions under which appellant says the stock was to be delivered.

Continuing its claim, appellant suggests that the stock issued to stockholders other than W. B. Rood was at all times retained by the company, and never, in fact, delivered, because the payments were not made. An inference is drawn from that fact by appellant to the effect that W. B. Rood's stock was handled in a like manner, and never was delivered because he did not pay the note. As a matter of fact, W. B. Rood did not pay the $18,800 note given for the stock. Such, in a general way, are the facts and circumstances on which appellant bases its argument that title to the stock never passed from the corporation to W. B. Rood. On the contrary, there are controlling

circumstances which indicate that the stock in fact was delivered to W. B. Rood by the corporation. Provision for the issuance of the stock in controversy was made by the stockholders. Under the articles of incorporation set forth in the abstract, it appears that the directors did not have such power. Whether in other parts of the articles of incorporation not shown in the abstract the directors were given the right to place conditions upon the issuance, of course, we do not know. In any event, as before indicated, the directors passed no recorded resolution providing that the stock should remain with the company until the consideration therefor was fully paid. Furthermore, in making its reports to the United States government for revenue purposes, the corporation stated that the 188 shares of stock in question were issued to W. B. Rood. Again, the corporation carried the $18,800 note delivered to it by Rood as an asset. W. B. Rood did not testify for either party.

By way of answer, however, he asserted his ownership of the stock, and declared that he had a right to pledge the same with the appellee Bankers Trust Company, to secure money borrowed therefrom. Another important fact is that, on March 15, 1922, The Monarch Company, the corporation in question, received from W. B. Rood, as security for the $18,800 stock note and other notes and obligations, certain patents. Moreover, E. J. Rood testified:

"I was bookkeeper of the company [The Monarch Company] during the year 1919. Q. Can you tell us whether, in making up your trial balance, subsequent to July, 1919, the 188 shares of stock issued to W. B. Rood and represented by Certificate 125 was taken into account as a stock liability? A. Yes, sir."

Because of the foregoing facts and circumstances, it is quite evident that the company intended to issue the stock in question to W. B. Rood. It is quite unlikely that officers of the institution would make solemn reports to the United States government, indicating the issuance of stock for the purposes of reducing the income tax, if in fact none had been issued. During all the times after the issue, the $18,800 note of W. B. Rood was carried as an asset of the institution.

Furthermore, it is most significant that, after the stock was

issued to W. B. Rood, he, on different occasions, voted the same at the company's stockholders' meeting. Not only, then, did the corporation recognize the stock as issued in its reports to the United States government, and in the listing of the note therefor as an asset of the institution, but also, it permitted the alleged stockholder to vote at corporate meetings. Manifestly, therefore, W. B. Rood owned the stock in question, so far as the corporation itself is concerned.

II. But it is said by appellant that, the original consideration not having been paid, the corporation, under the statute, had no right to issue the stock to W. B. Rood. Sections of the 1913 Supplement to the Code, under which this stock was issued, provide:

"1641-b. That from and after the passage of this act no corporation organized under the laws of the state of Iowa, except building and loan associations as defined and provided for  in Chapter 13, Title IX, of the Code, shall issue any capital stock or any certificate or certificates of shares of capital stock, or any substitute therefor, until the corporation has received the par value thereof. If it is proposed to pay for said capital stock in property or in any other thing than money, the corporation proposing the same must, before issuing capital stock in any form, apply to the executive council of the state of Iowa for leave so to do. Such application shall state the amount of capital stock proposed to be issued for a consideration other than money, and set forth specifically the property or other thing to be received in payment for such stock. Thereupon, it shall be the duty of the executive council to make investigation, under such rules as it may prescribe, and to ascertain the real value of the property or other thing which the corporation is to receive for the stock; and shall enter its finding, fixing the value at which the corporation may receive the same in payment for capital stock; and no corporation shall issue capital stock for the said property or thing in a greater amount than the value so fixed and determined by the executive council. * * *

"1641-c. It shall be the duty of every corporation to file a certificate under oath with the secretary of state, within ten

days after the issuance of any capital stock, stating the date of issue, the amount issued, the sum received therefor, if payment be made in money, or the property or thing taken, if such be the method of payment.

"1641-d. * * * The capital stock of any corporation is-. sued in violation of the terms and provisions hereof shall be void, and in a suit brought by the attorney-general on behalf of the state of Iowa in any court having jurisdiction, a decree of cancellation shall be entered; and if the corporation has received any money or thing of value for the said stock, such money or thing of value shall be returned to the individual, firm, company or corporation from whom it was received, and if represented by labor or other service of intangible nature, the value thereof shall constitute a claim against the corporation issuing stock in exchange therefor.

"1641-f. Any officer, agent or representative of a corporation who violates any of the provisions hereof shall, upon conviction, be fined not less than $200 nor more than $1,000, and be imprisoned in the county jail for not less than 30 days nor more than 6 months."

Previous consideration has been given by this court to Section 1641-d of the foregoing statutes. *Central Distrib. Co. v. Mulroney,* 196 Iowa 38; *Lone Tree Bank v. Timmerman,* 193 Iowa 1320; *Sherman v. Smith,* 185 Iowa 654; *First Nat. Bank of Ottumwa v. Fulton,* 156 Iowa 734. Our conclusion upon each occasion was that the word "void," used in said section, means "voidable," in fact. The section, it was held in the above cited cases, is for the benefit of the corporation. A note given for stock is collectible, although compliance has not been made with this section of the statute. While considering these statutes, we said in *Sherman v. Smith* (185 Iowa 654), supra, on page 656:

"We are of opinion that, when the statutes are read together, as they should be, it was not the legislative intention to make stock issued under the conditions at bar *ipso facto* void, but to make violations of this chapter a cause for having the stock canceled at the suit of the attorney-general, and to inflict other punishments for the violation, which, however, do not include that the stock issue shall be void, instead of voidable."

When considering the same legislation, the Circuit Court of Appeals in the Eighth Circuit declared, in *Ramsay v. Crevlin*, 254 Fed. 813, on page 819:

"The purpose of the legislators in enacting the statute [the sections of the 1913 Code above quoted] was to secure to the corporation payment for its stock in money or its equivalent to an amount equal to the par value of the stock. That object will be attained more successfully and certainly if the stock issued in violation of the statute is held to be voidable than if it is adjudged to be absolutely void. If it is held to be voidable, the corporation may avoid it, if its full value is not paid when demanded, and, on the other hand, may secure that value if the purchaser is willing to pay it. If it is held to be utterly void, it can recover nothing for the stock it has sold, and must return that which it has received."

Returning now to the case at bar, it is found that the stock in question was issued by the appellant corporation to W. B. Rood, in consideration for his note. Under the authority of the foregoing cases, the stock thus issued was voidable by the suit of the attorney-general, and probably by action of the corporation itself. However, before the corporation exercised the power of declaring the stock void, W. B. Rood, for a full and a valuable consideration, pledged the same with the appellee Bankers Trust Company. Thereby the rights of a third person have intervened. Appellees declare that the intervening third person was an innocent purchaser of this stock, and therefore obtained the same for the purposes of the security without any subjection to the appellant's claims, because the latter issued the stock, delivered it to W. B. Rood, and thus authorized him to go out into the world and borrow money upon such security.

For the purposes of the present discussion, it will be assumed that the appellee Bankers Trust Company loaned the money and took the security without any knowledge of appellant's equities. Thus it is apparent that the appellant, in effect, perpetrated a fraud upon the Bankers Trust Company, because the stock was issued and W. B. Rood received an apparent certificate therefor, although the cash consideration had not been given. Contrary, then, to appellant's previous action, it now seeks to say that W. B. Rood, regardless of the certificate, does

not own the stock because he did not pay therefor. No matter what appellant pretended before, it now says that the appellee Bankers Trust Company must suffer loss for the reason that the stock was not paid for originally. Although appellant extended an invitation to the world, including the appellee Bankers Trust Company, to deal with W. B. Rood and buy or accept the stock as collateral security, yet the appellant now would repudiate its actions and representations in that regard and hide behind the statute aforesaid for protection against an innocent pledgee for value. Obviously, appellant cannot thus conduct itself.

Corporation stock is not negotiable paper, but it possesses many characteristics of negotiability: for instance, such certificates of stock may be transferred, by proper indorsement, etc. Business necessity demands that transfers of these stock certificates be sustained unless unsurmountable legal barriers prevent. Estoppel against the corporation issuing the stock is the principle applied to protect the innocent transferee thereof. *Mudge v. Railway Mail Equip. Co.,* 167 Iowa 656; *Bankers Trust Co. v. McCloy,* 109 Ark. 160 (159 S. W. 205); *Herrick v. Humphrey Hardware Co.,* 73 Neb. 809 (103 N. W. 685); *C., N. O. & T. P. R. Co. v. Citizens' Nat. Bank,* 56 Ohio St. 351 (47 N. E. 249); *Beckwith v. Galice Mines Co.,* 50 Ore. 542 (93 Pac. 453); *May v. Cleland,* 117 Mich. 45 (75 N. W. 129); *Central Sav. Bank v. Smith,* 43 Colo. 90 (95 Pac. 307); *National Bank of Webb City v. Newell-Morse Royalty Co.,* 259 Mo. 637 (168 S. W. 699); *Maxwell v. Foster,* 67 S. C. 377 (45 S. E. 927); *Knox v. Eden Musee Americain Co.,* 148 N. Y. 441 (42 N. E. 988); *Paine, Webber & Co. v. Arkansas & Ariz. Copper Co.,* 136 Ark. 385 (206 S. W. 447); *Will's Admr. v. George Wiedemann Brew. Co.,* 171 Ky. 681 (188 S. W. 778); *Bank of Culloden v. Bank of Forsyth,* 120 Ga. 575 (48 S. E. 226); *Hook v. Hoffman,* 16 Ariz. 540 (147 Pac. 722); *Nelson v. Owen,* 113 Ala. 372 (21 So. 75); *Weniger v. Success Mining Co.,* 142 C. C. A. 180 (227 Fed. 548); 5 Fletcher's Cyclopedia of Corporations 5788, Section 3497; *Masury v. Arkansas Nat. Bank,* 35 C. C. A. 476 (93 Fed. 603); *O'Neil v. Wolcott Mining Co.,* 98 C. C. A. 309 (174 Fed. 527); *National City Bank v. Wagner,* 132 C. C. A. 533 (216 Fed. 473); *Bangor Elec. L. & P. Co. v. Robinson,* 52 Fed. 520; *National Safe Deposit, Sav. & Tr. Co. v. Hibbs,* 229 U. S. 391. Brief

excerpts from a few of the foregoing cases will illustrate the thought.

We suggested in *Mudge v. Railway Mail Equip. Co.* (167 Iowa 656), supra, on page 663:

"While recognizing that certificates of stock are not negotiable instruments, and therefore not subject to the same rules which the law affords as a protection to purchasers of commercial paper, the appellant contends that the rule of estoppel applies, and that, having issued the certificate of stock, and voluntarily delivered it to another, indorsed in blank, thereby creating *indicia* of ownership, that title cannot be asserted to it as against a person who in good faith and for value purchased it. The proposition stated has approval by the weight of authority, as announced by the courts of this country."

To the same effect is the language used by the Circuit Court of Appeals, Eighth Circuit, in *Weniger v. Success Mining Co.,* 142 C. C. A. 180, 185 (227 Fed. 548, 553):

"Although not strictly negotiable paper, stock certificates, like county warrants, bonds, and promissory notes, are constantly and frequently sold in the open market, and are the subjects of a multitude of commercial transactions. In view of this fact, their validity, like that of negotiable paper, should be sustained, where no insuperable legal obstacle forbids. *Bank v. Lanier,* 11 Wall. 369; * * * *National City Bank v. Wagner,* 216 Fed. 473; * * * And corporations and their officers who, by the apparent legality of their obligations, or by statements or recitals of their validity, have induced innocent purchasers to invest in them, or on them, are estopped from denying their validity or the truth of the representations they contain, on the ground that, in some preliminary proceedings which led to their execution, or in their execution itself, they failed to comply with some law or rule of action relative to the time or manner of their procedure with which they might have complied, but which they carelessly disregarded."

Likewise, this court stated, in *Sykes v. Pure Food Cider Co.,* 157 Iowa 601, on page 607:

"Although neither in form or character negotiable instru-

ments, stock certificates are readily transferable, and are bought and sold in the open market like other securities, and a corporation and its officers in issuing them are not only responsible to the persons dealing directly with them, but to all who deal with the stock in reliance on the representations made.''

So, following the same principle of law, the Supreme Court of Nebraska, in *Herrick v. Humphrey Hardware Co.* (73 Neb. 809 [103 N. W. 685]), supra, used this language (page 815):

''While it is true that shares of stock are not, strictly speaking, negotiable instruments, yet they partake of the qualities of a negotiable security to such an extent that they pass from indorser to indorsee shorn of all secret liens against the stock in the hands of the original owner.''

Speaking upon this subject, the Supreme Court of the United States, in *National Safe Deposit, Sav. & Tr. Co. v. Hibbs* (229 U. S. 391), supra, fittingly declares:

''Stock certificates are a peculiar kind of property. Although not negotiable paper, strictly speaking, they are the basis of commercial transactions, large and small, and are frequently sold in open market as negotiable securities are. In *Bank v. Lanier*, 11 Wall. 369, 377, 378, this court said: 'Stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they approximate to it as nearly as practicable. * * * Whoever in good faith buys the stock, and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him.' These principles are well known to business men, and are constantly acted upon by them. This circumstance should be given due weight in determining the rights of the parties in this case.''

It is not necessary to further quote from the authorities, for sufficient already appears to indicate the care with which courts must proceed before they exercise their power to declare such stock transfer of no validity. Here there is presented a case

where the corporation, before it had exercised its option to declare its issuance of the stock void, permitted the holder of such stock to pledge the same to an innocent transferee for a valuable consideration. The stock not being void from its inception, but only voidable, it is apparent that the corporation has estopped itself from exercising the statutory option. *Houston F. & M. Ins. Co. v. Swain* (Tex. Civ. App.); 114 S. W. 149. See cases above cited, and see *Sykes v. Pure Food Cider Co.* (157 Iowa 601), supra; *Mundt v. Commercial Nat. Bank,* 35 Utah 90 (99 Pac. 454); *Central Sav. Bank v. Smith,* 43 Colo. 90 (95 Pac. 307); *Allen v. South Boston R. Co.,* 150 Mass 200 (22 N. E. 917); *Appeal of Kisterbock,* 127 Pa. St. 601 (18 Atl. 381).

There is no new theory in the pronouncement of law above made. Frequently officers of corporations have caused the institution financial loss, or estopped it by fraud or misconduct.

In the case at bar, as before said, the appellee Bankers Trust Company was a transferee for value in good faith, and, we at this place assume, without notice of any infirmity in the stock. Consequently the transferee is entitled to have the stock transferred to it upon the corporate records. *Westminster Nat. Bank v. New England Elec. Works,* 73 N. H. 465 (62 Atl. 971). Also, the appellee Bankers Trust Company may, if it desires, sell the stock at foreclosure sale, and the purchaser thereof likewise will be entitled to have the stock transferred upon the corporate records. When it is thus transferred, the then holder of such stock will be entitled to demand and receive dividends, vote the stock, and otherwise engage in the corporate activities. Nothing here said, however, decides or in any way affects the right (if any) of corporate creditors and the state, to litigate the validity of the stock under consideration, or the obligation of the present or future holders thereof to assessments.

Contention is made in the arguments that this stock in fact was paid for in full through certain royalties for patents due W. B. Rood from the corporation. Indefiniteness appears regarding this. At least one patent from which royalties are thus claimed to be due was declared null and void by the Federal courts. Because of the view we have already taken of the controversy, it is not necessary, under this record, to decide this

question. Present and future stockholders, however, may defend against corporate creditors or the state, if they so desire, on the theory that the stock was thus paid for through royalties on said patents. This case will not be considered an adjudication of that point, for the reason that it is not decided here.

III. Assuming, without conceding, the foregoing conclusions of fact and law, the appellant continues its argument by saying that the appellee Bankers Trust Company was not a good-faith transferee without notice. The basis for appellant's claim is that the certificate of stock in question did not expressly indicate that the consideration therefor had been paid by W. B. Rood, nor does that certificate say whether such consideration was ''paid'' in money or in property. Section 1627 of the 1913 Supplement provides as follows:

''No certificate or shares of stock shall be issued, delivered or transferred by any corporation, officer or agent thereof, or by the owner of such certificate or shares, without having indorsed on the face thereof what amount or portion of the par value has been paid to the corporation issuing the same, and whether such payment has been in money or property. Any person violating the provisions of this section, or knowingly making a false statement on such certificate, shall be fined not less than $100 nor more than $500, and shall stand committed to the county jail until such fine and costs are paid. * * *''.

In the Code of 1927, Section 8409, there appears new legislation concerning the effect of issuing a certificate of stock when the corporation has not received payment thereof at par in money or property. Such later legislation, however, does not affect the statute under consideration, because this case arose under Section 1627 of the 1913 Supplement. Upon at least one occasion we discussed the effect of said Section 1627 of the 1913 Supplement. While a violation of those statutory terms will subject the officials responsible therefor to the penalty provided, yet such failure does not necessarily render the stock invalid. That statutory provision is for the benefit of the purchaser or transferee. *French v. Northwestern Laundry,* 132 Iowa 81. For analogous cases see *Pangborn v. Westlake,* 36 Iowa 546, and *Pennypacker v. Capital Ins. Co.,* 80 Iowa 56.

It is possible that the transferee or purchaser under certain circumstances might have the option to declare a contract to purchase certain stock invalid if the certificate did not show that the corporation had received full consideration, and in reality the title of the vendor or transferor thereto was defective because the original consideration to the corporation was not paid as required by the statute. But, as said in the *French* case (132 Iowa 81), supra, a failure of the certificate to meet the statutory requirements does not make the transaction void.

Although such transaction is not thus rendered void, will such incomplete stock certificate impart notice to the vendee or transferee of the vendor's or transferor's defective title? Without deciding what might be the result if the certificate were less complete than the one in question, it is enough to say that the certificate before us did not impart such notice. Here the certificate expressly declared that W. B. Rood "is the owner of 188 shares of the capital stock of The Monarch Company." Now, if W. B. Rood is the owner of such stock, he necessarily has the legal right to transfer the same. By thus warranting that W. B. Rood was the owner, The Monarch Company indicated that there was no violation of the statute demanding consideration in full as a prerequisite for stock issuance. Thereby the corporation in effect announced to the world that W. B. Rood was the absolute owner and title holder of the stock in question. Through its conduct in that regard, the corporation lulled the appellee Bankers Trust Company into security, induced it to rely upon the warranty contained in the stock certificate, and thereby persuaded that institution to accept the stock, upon the theory that W. B. Rood was the complete and absolute owner thereof. Under those circumstances, the stock certificate imparted no notice to the appellee Bankers Trust Company concerning the defective title of W. B. Rood. Especially is this true in view of the fact that the foregoing statute, as indicated by the above cited cases, is for the benefit of the vendee or purchaser of the stock.

The previous conclusion being true, it is quite immaterial whether the corporation indicated on the certificate that the stock was paid for by cash or property. No question is now raised that the stock was purchased with property, rather than cash. If there is any defect in the title held by the transferee, it is not because the corporation received property in lieu of

cash therefor. Moreover, the officers of the corporation in charge of this particular transaction testified that they had no knowledge of the claimed defect in Rood's title when the transfer was made. These men also said that the corporation had no such knowledge at that time. Necessarily, then, in view of the record, said transferee received the stock without notice of any defect in the title of W. B. Rood.

IV. A bar to appellee Bankers Trust Company's claim is interposed by the appellant through the statute of limitations. Those statutes are embodied in Section 11007 of the 1927 Code. So far as material, the section reads: .

"Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared: * * *

"5. Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years.

"6. Those founded on written contracts, or on judgments of any courts except those provided for in the next subdivision, and those brought for the recovery of real property, within ten years."

It was approximately 7 years ago when The Monarch Company refused to recognize the transferee's right to the stock in question. Soon after The Monarch Company's refusal in that regard, a suit was brought in the district court of Hamilton County by the appellee Bankers Trust Company, to compel the transfer of the stock in question on the corporate records. That suit was never tried, and finally it was stricken from the calendar. Later, at the instance of The Monarch Company, the case was reinstated on the Hamilton County district court calendar. But nothing is now claimed in this suit concerning that litigation. Hence, appellant urges that the 5-year statute of limitations aforesaid is a bar to appellee Bankers Trust Company's right to recover in this suit. This is upon the theory that the right to have the stock transferred does not arise out of a written contract; for, if such right is supported by

a written agreement, then the 10-year, rather than the 5-year, statute of limitations would apply. Ten years have not yet elapsed since The Monarch Company refused to transfer the stock, and if the 10-year statute is to govern, the present suit was brought within sufficient time. The problem, then, is to determine whether the right to have the stock transferred grows out of a written contract. A basis for the conclusion that such right to transfer arises out of a written contract may be found in the source of said right. Such source of the right to transfer is statutory. Adding, then, to the foundation statutes, the articles of incorporation, by-laws, the corporate charter, and certificate of stock, the final result is the contract. As was said in *Westminster Nat. Bank v. New England Elec. Works*, 73 N. H. 465 (62 Atl. 971, 975), supra, on page 479:

"*The plaintiff's* [the pledgee's or transferee's] *right to a transfer, therefore, depends on the contract of the corporation* [the issuing corporation]. *The bank* [the plaintiff, transferee, or pledgee] *is merely seeking the enforcement of a contractual obligation* [against the issuing corporation]. [The italics are ours.] It [the plaintiff] is not attempting in this proceeding to interfere with the essentially internal affairs of the corporation [the one issuing the stock]. It [the plaintiff] asks merely that the corporation [the one issuing the stock]—a party to the suit—shall recognize it [the transferee or pledgee] as a stockholder, by virtue of its [the issuing corporation's] representation to the bank [the pledgee or transferee] at the time of the sale that it would do so. * * * *The relief sought is merely the enforcement of a contractual right* [the italics are ours] which accrued to the plaintiff [pledgee or transferee] when it bought the stock of Bibber [the original stockholder and transferor]. It [the corporation issuing the stock] then impliedly promised that it would permit the transfer.''

Elaboration will aid the discussion here.

Section 1626 of the 1897 Code contains the following provisions:

"The transfer of shares [of corporate stock] is not valid, except as between the parties thereto, until regularly entered upon the books of the company, showing the name of the person

by and to whom transferred, the numbers or other designation of the shares, and the date of the transfer; * * * When any shares of stock shall be transferred to any person, firm or corporation as collateral security, such person, firm or corporation may notify in writing the secretary of the corporation whose stock is transferred as aforesaid, and from the time of such notice, and until written notice that said stock shall have ceased to be held as collateral security, said stock so transferred and noticed as aforesaid shall be considered in law as transferred on the books of the corporation which issued said stock, without any actual transfer on the books of such corporation of such stock.''

Similar enactments are now contained in Sections 8386 and 8387 of the 1927 Code.

Manifestly, under the circumstances disclosed in the case at bar, the transferee's right to have the stock changed upon The Monarch Company's records is based upon the Iowa statutory provision above quoted. The articles of incorporation, by-laws, statutes, certificates of stock, and corporate charter became the contract between the corporation and the stockholders. Said certificate was signed by the corporation, and the stockholders' rights under the articles of incorporation, by-laws, statute, and charter were recognized in writing. Such contract is written, as distinguished from oral, and hence the 10-year statute of limitations applies, rather than the 5-year limit. W. B. Rood was one party to that contract, and the corporation was the other. By assignment, Rood transferred his interest in the contract to the transferee, and the latter is now asserting such contractual right to have the stock transferred.

Said written contract between the corporation and Rood purports ''to set forth the mutual obligations of the parties thereto.'' Therefore, so far as the statute of limitations is concerned, it is to be considered as a written contract. See McDermott v. Mahoney, 139 Iowa 292.

Under the quoted statute, the appellee, by meeting the requirements, has a right to have the stock transferred on the company records. Did the appellee the Bankers Trust Company comply with the provisions of the foregoing Section 1626 of the 1897 Code, above quoted? Obviously it did. Although the ap-

pellee Bankers Trust Company claims to have notified The Monarch Company of the transfer at or near the time thereof, as permitted by the above statute, yet proof thereof is not sufficient. Whether the notice was given or not at the time claimed, the pledgee had a right, under the facts and circumstances here involved, to have the stock transferred upon the corporate records, in complying with the conditions prerequisite. Substantial compliance, therefore, was made with the quoted section of the 1897 Code; for, following the foregoing pledge of Rood's stock, and before the commencement of this suit, the appellee Bankers Trust Company did notify The Monarch Company of the pledge in writing, and properly asked that the corporate records be changed accordingly. That was more than seven years before the present litigation was commenced. An emphatic refusal at that time was made by The Monarch Company to recognize the transfer, because of the alleged defect in Rood's title, and for that reason only.

Then, as indicated in this division, suit was brought in Hamilton County to compel the transfer. That notification before mentioned was actually made prior to the Hamilton County suit. Such notice was given in writing, and the said suit started by the appellee Bankers Trust Company before The Monarch Company obtained any superior rights or equities on or in the stock aforesaid. Hence, all the essentials named for the transfer of stock in Section 1626, supra, have been met, because the appellee Bankers Trust Company gave notice of the pledge, and made request that the stock be transferred on The Monarch Company's books. All the preliminary demands having been met by the appellee Bankers Trust Company, it could enforce the foregoing contract to have such stock transferred on the company's records any time within the 10-year period, unless barred by laches.

V. Finally, appellant relies upon the principle of laches as a reason why the appellee Bankers Trust Company should not succeed. In laying the foundation for that doctrine, appellant  asserts that, during the seven years aforesaid, it considered that the transferee's right had been abandoned, because the suit in Hamilton County was not prosecuted. Relying upon that conclusion, appellant consolidated with a Missouri cor-

poration, under the name of the Knapp-Monarch Company, and the interest of an innocent third party, therefore, has intervened, appellant claims.

That being true, appellant says that laches bars the Bankers Trust Company's right to prevail in this litigation. Apparently, however, the appellant knew that the suit in Hamilton County was still pending, because it was upon appellant's own motion that the litigation in that county was revived. Furthermore, in consolidating with the Missouri Company, a bond was given to those adversely affected, as a protection against outstanding stock. Undoubtedly this was done because of the existing claim of the Bankers Trust Company.

Clearly, then, the appellant and all those interested knew and understood that the transferee is claiming a right to this stock. No prejudice, therefore, has arisen because of changed position, where appellant relied upon an apparent abandonment. Laches and acquiescence are a species of estoppel. *Doyle v. Burns,* 123 Iowa 488. Even though, under proper circumstances, laches and acquiescence may bar the right to recover in equity, although the period of limitations has not expired, yet, under the facts here presented, there are no existing grounds upon which to base such doctrine. There are no unprotected rights of third parties intervening, and the appellant in no way has been prejudiced or harmed by the so-called delay.

Consideration has been given to all of appellant's grounds for reversal, and it appears to us that none of them is well taken. Therefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

All the justices concur.